IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JAN 3 2002

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| LEON WATTS, et al. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-00681 |
| | § | |
| AUSTIN COUNTY, et al. | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND ORDER ON DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT

On December 27, 2001, the parties to this action consented to proceed before a United States magistrate judge for all purposes, including trial and entry of final judgment, under 28 U.S.C. § 636(c). (Docket Entry #78). Before this court are two motions for summary judgment, which were filed by Defendants Austin County, R. Wayne Burger, Mark Hannsz, Brad Tally and Boyd Neagle (collectively the "County Defendants"), and by Jerral Johnson, Clint Perkins, Michael Hutto, and the City of Bellville, Texas (collectively the "Bellville Defendants"). (Defendants' Motion for Summary Judgment ["County Defendants' Motion"], Docket Entry #56; Defendants Bellville, Texas, Jerral Johnson, Clint Perkins, and Michael Hutto's Motion for Summary Judgment ["Bellville Defendants' Motion"], Docket Entry #57). Plaintiffs have filed a response to the County Defendants' motion, and both groups of defendants have filed replies. (Plaintiffs Leon Watts's and Ann Washington's Opposition to Defendant's [sic] Motion for Summary Judgment ["Plaintiffs' Response"], Docket Entry #58; County, Sheriff Burger, Brad Tally, Mark Hannsz and Boyd Neagle's Reply to Plaintiffs' Response to Motion for Summary Judgment ["County Defendants' Reply"], Docket Entry #62; Defendants City of Bellville, Texas, Jerral Johnson, Clint Perkins, and

79

Michael Hutto's Reply to Plaintiff's [sic] Response to Motion for Summary Judgment ["Bellville Defendants' Reply"], Docket Entry #65). The court ruled on the defendants' motions, on the record, on December 31, 2001, for the reasons set out below. (Docket Entry #79). After a review of the pleadings, the summary judgment evidence submitted, and the applicable law, it is ORDERED that the motions for summary judgment are GRANTED, in part and DENIED, in part.

**Background**

This civil rights action arose from events related to the arrest of Floyd Kesee, Jr. ["Junior," "Kesee"], the nephew of Plaintiff Leon Watts ["Watts"]. (Plaintiffs' First Amended Complaint ["Amended Complaint"] ¶ 8, Docket Entry # 22; County Defendants' Motion ¶¶ 15, 16; Affidavit of Leon Watts["Watts Affidavit"] ¶ 3, Docket Entry #60). Watts is engaged to marry Plaintiff Servilla Ann Washington ["Washington"], and the two lived together in a mobile home in Kenney, Texas, at the time of the events alleged in Plaintiffs' Amended Complaint. (Amended Complaint ¶ 1; Watts Affidavit ¶¶ 2, 6; Affidavit of Sevilla Ann Washington ["Washington Affidavit"] ¶ 2). Plaintiffs allege that, on the morning of March 28, 1999, they were in their home preparing for church. (Amended Complaint ¶ 8; Watts Affidavit ¶ 6). At approximately 8:30 a.m., Plaintiffs heard pounding on the side and door of the trailer. (Amended Complaint ¶ 8). Washington, who had just taken a shower, put on a tee-shirt and shorts and went to the door. (*Id.* ¶¶ 9, 10). She "slightly opened the door" and asked who was there. (*Id.* ¶ 9). An unidentified person allegedly responded, "Police[,] we have a warrant for Junior." (*Id.*). Although Washington alleges that she responded that Junior did not live there, approximately ten law enforcement officers, from three different agencies, then entered Plaintiffs' home. (*Id.*). These law enforcement officers included Austin County Sheriff's Office Deputies Brad Tally ["Tally"], and Mark Hannsz ["Hannsz"], as well as Bellville Police Officers Clint Perkins ["Perkins"], and Michael Hutto ["Hutto"], all of whom are

2

named as defendants in this action.[1]  (*Id.* ¶3).  Plaintiffs allege that one or more defendants placed a gun to Washington's head and forced her to the floor.  (*Id.* ¶ 10).  Another defendant, identified only as "Doe I," reportedly "placed his hands between her legs and on her breast as he allegedly checked her for weapons notwithstanding the fact that it was clear, from the clothing she was wearing, that she was not armed." (*Id.* ¶ 26).  The officers then began to search the house.  (*Id.* ¶ 12).  In doing so, they encountered Watts, "who was undressed and sitting on the toilet." (*Id.*).  Allegedly, a gun was put to his head, and he was handcuffed and forced to lie naked on the floor.  (*Id.* ¶ 13).  After some time, the officers "apparently . . . [concluded] that they were at the wrong location," and they uncuffed Plaintiffs and left the trailer.  (*Id.* ¶ 15).

In the present action, Plaintiffs complain that "Defendants had no warrant to search the home of Plaintiffs, and no probable cause to have entered Plaintiffs' home without a warrant." (*Id.* ¶ 17).  Plaintiffs also allege that "Defendants had no reason to brandish weapons at either of the Plaintiffs' [sic] and they had no cause to take either of the Plaintiffs into custody." (*Id.* ¶ 18).  Plaintiffs claim that their rights, under the Fourth and Fourteenth Amendments to the United States Constitution, were violated, and they brought suit against these defendants under 42 U.S.C. § 1983.[2]  (*Id.* ¶¶ 17, 18).  Plaintiffs also make claims, under Texas common law, for the intentional torts of trespass and assault and battery.  (*Id.* ¶¶ 22-27, 28-31; Plaintiffs' Response ¶ 8).  Plaintiffs allege that defendant Jerral Johnson ["Johnson"], the Bellville Chief of Police, is responsible for the actions of all those defendants who work for the Bellville Police Department.  (Plaintiffs' Amended Complaint ¶ 2).

---

[1] In their Amended Complaint, Plaintiffs also made claims against Texas Department of Public Safety Officer Gerald Brown, Austin County Deputy Jeff Meador, and Bellville Police Officer Roger Garrett.  (First Amended Complaint ¶ 3, Docket Entry #22).  These individuals have not been served with process, and Plaintiffs have since abandoned all claims against them.  (Docket Entry #45).

[2] Plaintiffs' Amended Complaint alleged that this action arises under 42 U.S.C. § 1985(2)(3), as well as under § 1983.  (Plaintiffs' First Amended Complaint ["Amended Complaint"] ¶ 4, Docket Entry # 22).  However, Plaintiffs have chosen not to pursue a claim under § 1985.  (Plaintiffs Leon Watts's and Ann Washington's Opposition to Defendant's [sic] Motion for Summary Judgment ["Plaintiffs' Response"] ¶ 7, Docket Entry #58)

They allege further that defendant R. Wayne Burger ["Burger"], the Sheriff of Austin County, is responsible for the actions of all those defendants who are members of the Austin County Sheriff's Department. (*Id.*).  Plaintiffs claim that "each of the individual Defendants were acting as agents of Governmental Defendants County and Bellville under color of law provided to them by virtue of their employment status with said Governmental Defendants, and in accordance with the policies and practices of said Governmental Defendants." (*Id.* ¶ 5).  They also state that the claims against the individual defendants are made against them in their individual capacities only.  (Plaintiffs' Response ¶ 5).  Plaintiffs complain that, as a result of the events alleged, each sustained physical and "emotional" injuries, as well as injuries to "their rights to own, control, and maintain their properties."  (Amended Complaint ¶¶ 19, 27, 31).  They are seeking $9,000,000 in compensatory damages, $3,200,000 in punitive damages, attorney's fees, and court costs.  (*Id.* at 8-9).

The County Defendants have moved for summary judgment on all of Plaintiffs' claims, arguing that they are entitled to judgment as a matter of law on the § 1983 claims because no genuine issue of material fact has been raised on those allegations.  (County Defendants' Motion ¶¶ 7, 11; County Defendants' Response ¶ 30).  The individual defendants argue that they are immune from suit on both the § 1983 claims and the tort claims.  (County Defendants' Motion ¶¶ 9, 13, 32).  To the extent that the individual defendants have been sued in their official capacities, the County Defendants argue that the claims against them must be dismissed, because an official capacity suit is a suit against Austin County [the "County"], not against the county officials.  (Defendants' Motion for Summary Judgment [*Id.* ¶¶ 10, 44).  The individual defendants, the County, and the City of Bellville [the "City"] argue that they are entitled to sovereign immunity on the tort claims.[3]  (*Id.*

---

[3] Plaintiffs have since clarified that the tort claims are lodged against the individual defendants only, and that all claims made against the named officers are in their individual capacities, not in their official capacities.  (Plaintiffs' Response ¶¶ 5, 8).

4

¶ 13; Bellville Defendants' Motion ¶ 1). Further, Sheriff Burger maintains that, [u]nder Texas law, a county sheriff cannot be sued in his or her official capacity," so all claims against him should be dismissed.[4] (County Defendants' Motion ¶ 43). Burger also contends that he "is not liable in his supervisory capacity, and he did not participate in the acts made the basis for this suit." (*Id.* ¶ 14). The Bellville Defendants maintain, in addition, that the individual defendants are entitled to official immunity from Plaintiffs' common-law tort claims, and to qualified immunity from the § 1983 claims. (Bellville Defendants' Motion ¶ 1). Finally, they argue that there is no genuine issue of material fact that would support a § 1983 claim against the City because there is "no evidence of any policy or custom resulting in the constitutional claim alleged." (*Id.*). After a review of the pleadings, the summary judgment evidence submitted, and the applicable law, it is ORDERED that the motions for summary judgment by Burger, Johnson, the City and the County are GRANTED. Further, the motions by Tally, Hannsz, Neagle, Perkins, and Hutto for summary judgment on the intentional tort claims are also GRANTED. However, the parties have not provided an adequate legal discussion on the § 1983 claims lodged against the individual defendants and the qualified immunity defense. For that reason, the parties are ORDERED to re-brief the issue of qualified immunity, as it pertains to the specific facts of this case.

**Standard of Review**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Norman v. Apache Corp.*, 19

---

[4] *See id.*

5

F.3d 1017, 1023 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A court cannot grant a motion for summary judgment simply because the motion is unopposed. *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1279 (5th Cir. 1985). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *Little*, 37 F.3d at 1075.

When the moving party has met its Rule 56 burden, the non-movant cannot survive a motion for summary judgment by resting merely on the allegations in its pleadings. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). Instead, the non-movant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075. To meet its burden, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Rather, the nonmoving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). If the evidence presented to rebut the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250. (1986). But, in deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Id.* at 248.

## Discussion

### *Tort Claims*

Plaintiffs claim that Officers Tally, Hannsz, Neagle, Perkins, and Hutto ["the Officers"] violated Texas common law by trespassing on their land in the attempt to arrest Kesee. (Amended Complaint ¶¶ 28-31). They claim further that these defendants committed assault and battery because each "physically touched and used force on each of the Plaintiffs in that they poked guns to the backs of their heads, forcefully placed the arms of Plaintiffs behind their backs and tightly secured said arms with handcuffs." (*Id.* ¶ 25). Plaintiffs complain that one officer, who is not identified as a named defendant to this suit, "placed his hands between [Washington's] legs and on her breast as he allegedly checked her for weapons." (*Id.* ¶ 26). The Officers have raised the doctrine of official immunity as a bar to these common-law tort claims.[5] (Bellville Defendants Motion ¶¶ 1, 42).

As a threshold matter, it should be noted that, under Texas law, "trespass to real property occurs when a person enters another's land without consent." *Williams v. City of Dallas*, 53 S.W.3d 780, 788 (Tex. App.— Dallas, no pet. 2001); *see generally Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654 (Tex. 1999). Here, Watts has testified, by deposition, that he told Washington to let the Officers into the trailer. (Bellville Defendants' Motion, Appendix D: Oral Deposition of Leon Watts ["Watts Depo."] at 11). In her deposition, Washington testified that, although she did not specifically grant the Officers permission to enter her house, she did open the door for them. (Bellville Defendants' Motion, Appendix E: Oral Deposition of Servillia [sic] Ann Washington ["Washington Depo."] at 14-15; Affidavit of Servilla Ann Washington ["Washington Affidavit"] ¶ 8, Docket Entry #61).

---

[5] The County Defendants have not raised the affirmative defense of official immunity. However, immunity from suit is a jurisdictional issue, which the court may raise *sua sponte*. *Kinnear v. Texas Com'n on Human Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000); FED. R. CIV. PROC. 12(h)(3). In the interest of judicial economy, the court has weighed this defense as it applies to each of the individual defendants, without regard to his employer.

Because Plaintiffs admitted the Officers onto their property, there is no fact issue on a trespass claim, and the Officers are entitled to a judgment in their favor on that claim, as a matter of law.

It should be noted that Plaintiffs have not specifically alleged that any of the named defendants is the one, or ones, who committed the complained of assault and battery. The undisputed evidence is that Plaintiffs were handcuffed by Deputy Meador and by Department of Public Safety Trooper Brown. (County Defendants' Motion, Exhibit E: Supplement by Sgt. Brad Tally ["Tally Supplement"] at 3, 4). Neither of those men is a party to this suit. Officers Neagle and Hannsz have produced uncontroverted testimony denying that either of them pointed his weapon at Plaintiffs, forced them to the ground, or touched them in any way. (County Defendants' Motion, Exhibit B: Affidavit of Boyd Neagle ["Neagle Affidavit"] at 2; *Id.*, Exhibit F: Affidavit of Mark Hannsz ["Hannsz Affidavit"] at 2). Tally also testified, by an affidavit which remains uncontroverted, that he did not force Plaintiffs to the ground or "place [his] hands on [them] for any purpose." (Tally Affidavit at 2). Likewise, Perkins swore, by uncontroverted affidavit, that he "had no direct contact with either of the occupants of the trailer home at any time." (Bellville Defendants' Motion, Exhibit H: Affidavit of Clint Perkins ["Perkins Affidavit"] at 1). The evidence is further undisputed that both Plaintiffs were already on the floor, in handcuffs, when Perkins and Hutto entered their home. (Perkins Affidavit at 1; Bellville Defendants' Motion, Exhibit I: Supplemental Report by Officer Mike Hutto ["Hutto Report"]). Nonetheless, to the extent that Plaintiffs might have raised a fact issue on the state law claim for assault and battery, the Officers have pleaded official immunity as a bar to that claim.

Under Texas law, official immunity is an affirmative defense, and so the burden is on a defendant to establish that he is entitled to such protection. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). To do so, he must show that the events alleged arose out of his discretionary duties, which were performed in good faith, and while he was acting within the scope

of his authority. *Id.* Here, it is undisputed that Perkins and Hutto were acting within the scope of their authority as Bellville Police officers when they participated in the search of Plaintiffs' home.[6] (Amended Complaint ¶ 5; Perkins Affidavit at 1; *Id.*, Exhibit J: Affidavit of Chief Jerral Johnson ["Johnson Affidavit"]). It is further undisputed that Tally, Hannsz, and Neagle were acting within the scope of their authority as Austin County Deputies at that time. (Amended Complaint ¶ 5; Neagle Affidavit at 1; Tally Supplement at 1; Hannsz Affidavit at 1).

To determine whether the events alleged arose out of these officers' discretionary duties, the court must assess "whether the officer is performing a discretionary function, not on whether the officer has discretion to do an allegedly wrongful act while discharging that function." *Chambers*, 883 S.W.2d at 653. An officer who is performing a discretionary function is protected by immunity even if "his conduct was negligent or a mistaken exercise of public duties." *City of Hidalgo v. Prado*, 996 S.W.2d 364, 367 (Tex. App.—Corpus Christi 1999, no pet.); *Harris County v. Ochoa*, 881 S.W.2d 884, 888 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Vasquez v. Hernandez*, 844 S.W.2d 802, 804 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.). A discretionary function is one that "involves personal deliberation, decision and judgment." *Chambers*, 883 S.W.2d at 654. A peace officer's decision to use force against another has been deemed an exercise of personal discretion, as is an officer's decision "[i]f, how, and when to arrest a suspect." *Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 376 (Tex. App.—Dallas 1994, no writ) (citing TEX. PENAL CODE ANN. § 9.51(a)-(c) (Vernon 1974); *City of Houston v. Newsom*, 858 S.W.2d 14, 16-17

---

[6] Plaintiffs claim that Perkins and Hutto were outside of the jurisdiction of the Bellville Police Department at the time of the events alleged. (Amended Complaint ¶ 21). However, there is uncontroverted evidence that "the participation of City of Bellville police officers in the execution of Kesee's felony arrest warrant was not only lawful, but obligatory," because the City "participates in a Law Enforcement Mutual Assistance Agreement with Austin County whereby assistance is provided to the Austin County Sheriff's Department upon request." (Bellville Defendants' Motion ¶ 5) (citing Bellville Defendants' Motion, Exhibit J: Affidavit of Jerral Johnson; *Id.*, Exhibit K: Law Enforcement Mutual Assistance Agreement with Austin County and Cooperative Working Agreement with Westside Narcotics Task Force).

(Tex. App.—Houston [14 Dist.] 1993, no writ); *Vasquez*, 844 S.W.2d at 805). It follows that any decision to use force against the Plaintiffs or to place them in handcuffs arose out of the Officers' discretionary duties.

Finally, an officer who raises the defense of official immunity must establish that he acted in good faith by showing that "'a reasonably prudent officer, under the same or similar circumstances, could have believed that' his acts were justified." *Half Price Books*, 883 S.W.2d at 377 (quoting *Chambers*, 883 S.W.2d at 656). This test "is one of objective legal reasonableness," and it has been compared to the federal qualified immunity analysis. *Chambers*, 883 S.W.2d at 656; *see Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir. 2001) (citing *Cantu v. Rocha*, 77 F.3d 795, 808-09 (5th Cir. 1996)). To prevail on a motion for summary judgment, the movant must provide evidence to support the claim. *See Chambers*, 883 S.W.2d at 656-57; *Half Price Books,* 883 S.W.2d at 377. Then, and only then, does the "good faith test set[] an elevated standard of proof for the nonmovant seeking to defeat a claim of official immunity." *Chambers*, 883 S.W.2d at 656. Here, Sheriff Burger testified, by affidavit, that officers have a high risk of injury or death during "narcotics related incidents." (Burger Affidavit at 2). He testified further that when executing a warrant for a suspect wanted on drug charges,

> It is necessary for the safety of the premises occupants and the officers that they be secured and officers survey the premises for all possible occupants. This is particularly true when the subject of the warrant is known to be dangerous and/or when the warrant to be executed is for a felony drug offense.

(*Id.*). In response to this assertion, Plaintiffs submitted an affidavit from Floyd Kesee, Jr., in which he swears that, although he has had "several contacts with Law Enforcement, none of [these] contacts involved physical violence or the threat of violence." (Affidavit of Floyd Kesee, Jr. ¶ 10, Docket Entry # 59). This assertion, however, does not controvert Tally's sworn statement that he believed that Kessee, or others in the residence, may have been armed. (Tally Supplement at 1). On

10

this record, Plaintiffs have not met the elevated standard of proof required, under Texas law, to defeat the claim of official immunity. *See Chambers*, 883 S.W.2d at 656. The motion for summary judgment, by defendants Tally, Hannsz, Neagle, Perkins, and Hutto, is GRANTED on the common-law tort claims.

### Section 1983 Claims

Plaintiffs claim that Tally, Hannsz, Neagle, Perkins, and Hutto entered their home without a warrant, or probable cause, and wrongfully placed them under arrest. (Amended Complaint ¶ 17). They complain further that these Officers used excessive force against them in making the arrests. (*Id.* ¶ 18; Plaintiffs' Response at 5). Watts and Washington allege that this was a violation of their rights, under the Fourth and Fourteenth Amendments to the United States Constitution. (Amended Complaint ¶¶ 17, 18). Plaintiffs insist that Burger, the Austin County Sheriff, and Johnson, the Bellville Chief of Police, directed the actions of the Officers at all times, and that all actions taken by the individual defendants were "in accordance with the polices and practices of [Austin County and the City of Bellville]." (*Id.* ¶¶ 3, 5). Plaintiffs seek recovery on these claims, under 42 U.S.C. § 1983. (*Id.* ¶ 4).

Section 1983 provides, in relevant part, that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. The United States Supreme Court has held that "municipalities and other local government units [are] included among those persons to whom § 1983 applies." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). However, in the context of a § 1983 claim, the Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior.*" *Board of County Commissioners, Bryan County, Okla. v. Brown*, 520 U.S.

11

397, 403 (1997) (*citing Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986); *City of St. Louis v. Prapotnik*, 485 U.S. 112, 122 (1988); and *City of Canton v. Harris*, 489 U.S. 378, 393 (1989)). To prevail on their § 1983 claims, Plaintiffs must establish that they were deprived of constitutional or other federally-protected rights as a result of an official policy, practice, or custom of that governmental entity. *Brown*, 520 U.S. at 403; *Monell*, 436 U.S. at 689, 691; *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). But it is well settled that a city cannot be liable under § 1983 merely because it employed a tortfeasor. 520 U.S. at 403; *Monell*, 436 U.S. at 694; *Campbell*, 43 F.3d at 977. The Supreme Court has, therefore, emphasized that

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404 (emphasis original); *see also Monell*, 436 U.S. at 694. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403-04 (*citing Monell*, 436 U.S. at 694).

The United States Court of Appeals for the Fifth Circuit has defined an "official policy," in this context, as a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304-05 (5th Cir. 1995), *cert. denied sub nom., Conley v. Eugene*, 116 S. Ct. 1680 (1996) (citations omitted). It is well established that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policy

makers." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) *(quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)). The official policy at issue must be a "deliberate and conscious choice" by a municipal policy-maker. *Harris*, 489 U.S. at 389; *Pembaur*, 475 U.S. at 483. However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. "Instead, it is when execution of a government's policy or custom . . . inflicts the [constitutional] injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In addition, it is "well settled . . . that supervisory officials cannot be held vicariously liable for their subordinates' actions" in a § 1983 cause of action. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). On this matter, the Fifth Circuit has held that:

> Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional policies or (ii) implement unconstitutional policies that causally result in plaintiff's injury.

*Id.* If follows that, for a plaintiff to prevail on a § 1983 claim against a supervisory official, the evidence must show that the official himself committed an act which resulted in a violation of constitutional rights. *See Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996); *Mouille*, 977 F.2d at 929.

### 1.    *Austin County and Bellville*

Austin County argues that it is entitled to summary judgment on Plaintiffs' § 1983 claim "[b]ecause Plaintiffs have no evidence of a custom or policy by Austin County or Austin County Sheriff's Department, the execution of which caused a constitutional violation." (County Defendants' Motion ¶ 46). The City of Bellville makes a similar argument because "Plaintiffs have not identified any unconstitutional policy or custom, nor shown how they were injured by [one]." (Bellville Defendants' Motion ¶ 72).

Plaintiffs agree that the defendants have articulated the correct standard for a § 1983 claim against a governmental entity. (Plaintiffs' Response ¶ 6). However, they ask the court to defer

13

ruling on this issue "until the conclusion of the taking of evidence." (*Id.*). The discovery period in this suit ended on December 14, 2001. (Docket Entry #43). To date, Plaintiffs have not made the court aware of any evidence to support their § 1983 claims against the governmental entities. They have not submitted any depositions or affidavits that provide evidence of a policy or custom that led to an unconstitutional practice, nor have they made any argument on the existence of a specific policy or custom.[7] Further, Plaintiffs have not made a proper request for a continuance, under Federal Rule of Civil Procedure 56(f). FED. R. CIV. PROC. 56(f). To justify such a request, "a party must indicate to the court by some statement . . . why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact. The nonmoving party 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts.'" *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1395 (1994) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)). Plaintiffs have not provided such a statement, or even an argument on that point, and the court will not defer findings on the motion by these defendants.

On this record, Plaintiffs have failed to raise a genuine issue of material fact on whether an unconstitutional policy exists which led to their alleged injuries. For this reason, it is ORDERED that the motions for summary judgment by Austin County and the City of Bellville, Texas, on the § 1983 claim, are GRANTED.

---

[7] In a motion to strike Plaintiff's expert witness, Defendants have submitted for the court's review the deposition of Roy Hubert, a former Bellville police officer. (Defendants' Motion to Exclude Testimony of Roy Hubert, Exhibit C: Oral Deposition of Roy L. Hubert, Docket Entry # 72). Plaintiffs may anticipate that this witness will testify that certain Bellville police officers were poorly trained or, perhaps, racially bigoted. But even if Hubert's testimony somehow raises the specter of an unconstitutional custom or policy, Plaintiffs have not produced any evidence to show that such a policy was a "deliberate and conscious choice" by a municipal policy-maker. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Nor have they made any such argument in response to the summary judgment motions, which have been pending since August 30, 2001.

### 2.    *Sheriff Burger and Chief Johnson*

Sheriff Burger and Chief Johnson argue that they are entitled to summary judgment because neither was present during the complained of incident, and "individual liability under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior*." (Bellville Defendants' Motion ¶ 58; *see also* County Defendants' Motion ¶ 41).  Sheriff Burger has testified, by affidavit, that he "was not present on March 28, 1999, at the time of the incidents complained of by Plaintiffs, and [he] did not participate in the execution of the warrant for Floyd Kessee, Jr." (Burger Affidavit at 1).  Likewise, Chief Johnson has testified that he "was not present at the scene of the incident, nor did [he] give prior authorization for City of Bellville police officers to participate in this particular operation." (Bellville Defendants' Motion, Exhibit J: Affidavit of Chief Jerral Johnson).  Plaintiffs have not controverted this testimony in any way, nor have they presented any evidence of policies by the Bellville Police Department or the Austin County Sheriff's Department that would cause the alleged constitutional violations.  On this record, Plaintiffs have not raised a genuine issue of material fact on whether Sheriff Burger or Chief Johnson are subject to liability, under § 1983. *See Mouille*, 977 F.2d at 929.  The motions for summary judgment by these two officials , on this issue, are GRANTED.

### 3.    *Officers Tally, Hannsz, Neagle, Perkins, and Hutto*

The other defendants argue, collectively, that each is entitled to qualified immunity from suit on Plaintiffs' § 1983 claim, because "a reasonable person in [his] position would not have appreciated that the conduct would violate the Plaintiffs' rights."[8] (County Defendants' Motion ¶¶ 32, 34; *see also* Bellville Defendants' Motion ¶¶ 57, 61).  The Officers maintain that the entry and

---

[8] At the outset, it should be noted that the current argument is centered entirely on the allegation that the entry and search of Plaintiffs' home was unlawful.  The Officers have not moved for summary judgment on Plaintiffs' claims of unlawful arrest or excessive force. (*See* County Defendants' Motion ¶¶ 37-40; Bellville Defendants' Motion ¶¶ 66-68).

search was reasonable because they believed that Kesee lived there, and they had a warrant for his arrest on felony drug charges. (County Defendants' Motion ¶¶ 36, 37; Bellville Defendants' Motion ¶¶ 3, 4). The Officers contend that "[t]he incident occurred as a result of the service of a valid arrest warrant at a correct address, although subsequent events suggest that law enforcement officers may have been given incorrect information." (Bellville Defendants' Motion ¶ 3). Defendants argue that the search "of a third party's home for a person named in an arrest warrant does not violate the third party's Fourth Amendment rights where the officers reasonably believed that the suspect resided there and was there at the time of the search." (*Id.* ¶ 66). They contend that, at most, the "failure to ascertain the correct dwelling of Floyd Kessee, Jr. is . . . a negligent mistake" and, as such, does not constitute a violation of Plaintiffs' rights, under the Fourth Amendment. (County Defendants' Motion ¶ 38; *see also* Beeville Defendants' Motion ¶ 67). The Officers point out that Watts and Washington were released as soon as it was realized that the wrong residence had been entered. (County Defendants' Motion ¶ 40).

Plaintiffs respond to these arguments by insisting that "[a]ny reasonably competent law enforcement officer would have known that the entry into the residence of Plaintiffs, the arrest of their persons, and search of their premises was wrongful." (Plaintiffs' Response at 4). They argue that the law is "clearly established that law enforcement must have a warrant to search the home of a third person when they are seeking to arrest a subject of an arrest warrant who they have reason to believe is in the home of a third person." (Plaintiffs' Response at 6) (citing *Steagal v. U.S.*, 451 U.S. 204 (1981)). Plaintiffs maintain that the Officers "knew or should have known where the suspect lived . . . [and] that they were entering the home of Plaintiffs." (*Id.* at 7). Finally, Plaintiffs argue that the warrant that was issued for Kesee's arrest was invalid, on its face, as it is "overbroad and unspecific." (*Id.* at 7, 9). Plaintiffs insist, therefore, that "Defendants knew or should have

known that the document they referred to as an Arrest Warrant did not authorize them to enter into and search the home of Plaintiffs." (*Id.* at 6).

The Supreme Court has defined qualified immunity as "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier*, 121 S.Ct. at 2156; *Mitchell*, 472 U.S. at 526. It follows that, "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier*, 121 S.Ct. at 2156. In *Saucier v. Katz*, the Supreme Court refined the contours of qualified immunity that were first articulated in *Butz v. Economou*, 438 U.S. 478 (1978). The *Saucier* decision emphasized that a trial court's evaluation of a qualified immunity defense requires a two-step process. *Saucier*, 121 S.Ct. at 2155. First, the court must answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 2156 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If the allegations do not show a violation of constitutional rights, the inquiry ends there, and the officer is entitled to qualified immunity. *Id.*; *Price v. Roark*, 256 F.3d 364, 369 (2001). "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 121 S.Ct. at 2156. A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Creighton*, 483 U.S. at 640). That is, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 2156-57. Stated simply, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate

17

the law.'" *Id*. at 2157 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  For example, officers

who make "reasonable mistakes as to the legality of their actions" are entitled to immunity, even if

they conduct "an unreasonable, warrantless search." *Id*. at 2158-59 (citing *Anderson v. Creighton*,

483 U.S. 635 (1987)).  But whether a mistake is reasonable is a highly fact-specific inquiry.  "The

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would

be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id*. at

2156 (emphasis added).

Here, to determine whether the named defendants are entitled to qualified immunity, the first

inquiry is whether the facts, as alleged by Plaintiffs, show a violation of their constitutional rights

under the Fourth Amendment. *See Saucier*, 121 S.Ct. at 2156.  The Fourth Amendment states, in

relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures, shall not be violated."  U.S. CONST. amend. IV.  A

violation of that command by a state officer, acting under color of state law, permits a plaintiff to

seek money damages under 42 U.S.C. § 1983.  *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The central inquiry under the Fourth Amendment is whether a search or seizure is

reasonable under all the circumstances of a particular governmental invasion of a person's personal

security." *Milligan v. Slidell*, 226 F.3d 652, 654 (5th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1,

19 (1968).  "It is well settled under the Fourth and Fourteenth Amendments that a search conducted

without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few

specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218,

219 (1973) (quoting *Katz v. U.S.*, 389 U.S. 347, 357; *Coolidge v. New Hampshire*, 403 U.S. 443,

454-45; *Chambers v. Maroney*, 399 U.S. 42, 51)).  If a citizen claims that a government officer has

conducted a warrantless search, and violated his rights under the Fourth Amendment, the burden

then shifts to that officer to show that a relevant exception to the warrant requirement exists.  *See*

18

*U.S. v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). Here, there is no evidence that the Officers had a warrant to search Plaintiffs' home. (*See, e.g.*, County Defendants' Motion ¶ 37). The burden is therefore on them to show that some exception to the warrant requirement exists in this case. *See Jones*, 234 F.3d at 239. On that issue, the Officers argue that they believed, albeit mistakenly, that they went to the home of the person named in a presumptively valid arrest warrant. (*Id.* ¶ 38). They argue that an incorrect address does not rise to the level of a Fourth Amendment violation when it is reasonable to search that address for a wanted person. (*Id.*; Bellville Defendants' Motion ¶¶ 66, 67) (citing *Maryland v. Garrison*, 480 U.S. 79, 87 (1987); *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *U.S. v. Route*, 104 F.3d 59 (5th Cir.), *cert. denied*, 521 U.S. 1109 (1997); *U.S. v. Gordon*, 901 F.2d 48, 50 (5th Cir. 1990); *U.S. v. Parias*, 805 F.2d 1447 (11th Cir. 1986), *cert. denied*, 482 U.S. 916 (1987); *Bratton v. Toboz*, 764 F. Supp. 965 (M.D. Pa. 1991); *Harasim v. Kuchar*, 702 F. Supp. 178 (N.D. Ill. 1988)). However, the evidence suggests that the warrant issued for Kesee's arrest was not merely incorrect, but that it may have been insufficient on its face. A review of the warrant shows that the address given for Kesee was "Highway 36 North, Kenney, Texas 77452." (County Defendants' Motion, Exhibit A: Warrant No. 99-4532JI ["Warrant"]). Kesee testified, by affidavit, that at the time of the events alleged in Plaintiffs' Amended Complaint, he lived with his parents on Turtle Dove Lane in Kenney, Texas. (Kesee Affidavit ¶¶ 2, 3, 11). In Washington's deposition, she testified that Turtle Dove Lane is a private dirt road that intersects with Highway 36 at an approximate right angle. (Washington Depo. p. 51; *see id.*, Exhibit 2 (drawing of Turtle Dove Lane)). Both she and Watts testified that, at the time of the events alleged, there were four residences on Turtle Dove Lane—theirs, the one Kesee lived in, and two others. (Watts Affidavit ¶ 3; Washington Affidavit ¶ 3). The warrant, however, does not specify that Kesee lived on Turtle Dove Lane, and it does not contain any information that distinguishes Kessee's home from any other

19

residence on Highway 36. (*See* Warrant). The warrant lacks, for instance, a street address, a cross street, or a description of the suspect's home. (*See id.*).

The warrant here may, indeed, be legally insufficient. Plaintiffs have submitted two reports from expert witnesses who opine that the warrant was facially invalid because "the address of the suspect was ambiguous."[9] (Summary Report by Roy Hubert, Docket Entry #64; *see also* Summary Report by Connie Williams, Docket Entry #63). But Plaintiffs have not supported their argument with appropriate authority. In fact, neither party has supplied the court with briefing that identifies the established Fifth Circuit law that is relevant to the facts of this dispute. Decisions involving § 1983 claims against law enforcement officers, based on an allegedly unlawful search, stemming from an an allegedly invalid warrant, have not been referenced by either party. All of the cases cited by Defendants concern either the admissibility of evidence in a criminal conviction, or a warrant that was issued with an incorrect, but facially valid, address. (*See* Beeville Defendants' Motion ¶¶ 66, 67, and cases cited therein). Plaintiffs, for their part, have cited only Texas law, rather than relevant Fifth Circuit decisions. (*See* Plaintiffs Response at 8, 9, 10) (citing *City of Robstown v. Ramirez*, 17 S.W.3d 268 (2000 Tex. App. Lexis 2181); *Evans v. State*, 530 S.W.2d 932 (Tex. Crim. App. 1975); *Hudson v. State*, 662 S.W.2d 957 (Tex. Crim. App. 1984)). The court is unable to determine, from these submissions, the law that governs whether Plaintiffs have stated a claim for a violation of their rights under the Fourth Amendment, or whether those rights were clearly established at the time of the events alleged so that a reasonable officer "would understand that what he is doing violates [those] right[s]." *See Saucier v. Katz*, 533 U.S. —, 121 S.Ct. 2151, 2156 (2001); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 222 (1973). Lacking the proper legal context, and having little time

---

[9] Defendants have moved to strike the testimony of these witnesses. (Motion to exclude Testimony of Connie Williams by Austin County, Docket #70; Motion to exclude testimony of Roy Hubert by Austin County, Docket Entry #72; Motion to exclude expert testimony of Roy L Hubert Jr by Bellville Texas, Jerrall Johnson, Clint Perkins, Michael Hutto, Docket Entry #75).

to devote to independent research on the matter, the court will continue the motions until additional briefs have been filed. The parties are ORDERED to re-brief the issue of qualified immunity, with particular reference to the facts alleged here, and with citations to the appropriate Fifth Circuit law.

**Conclusion**

Based on the foregoing, it is

ORDERED that the motions by R. Wayne Burger, Jerrall Johnson, Austin County, and the City of Bellville, Texas for summary judgment on Plaintiffs' § 1983 claim are GRANTED.

ORDERED that the motions by Brad Talley, Mark Hannsz, Boyd Neagle, Clint Perkins, and Michael Hutto for summary judgment, due to official immunity, on the intentional tort claims of trespass and assault and battery are GRANTED.

It is further ORDERED that the parties are to brief the issue of qualified immunity as it pertains to Plaintiffs' claim, under § 1983, that Talley, Hannsz, Neagle, Perkins and Hutto conducted an illegal search of their home, based on an invalid arrest warrant, in violation of the Fourth Amendment. As the court previously ordered on December 31, 2001, the parties are to submit these briefs on or before January 15, 2002. Any replies must be submitted to the court within three (3) days after the date the briefs are filed.

The clerk shall send copies of this memorandum order to all counsel of record.

SIGNED at Houston, Texas, this ___2nd___ day of January, 2002.

_____
MARY MILLOY
UNITED STATES MAGISTRATE JUDGE